**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0442n.06
Filed: May 26, 2005

**No. 04-3336**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE SOUTHERN |
| RONALD TURNER, | ) DISTRICT OF OHIO |
| | ) |
| Defendant-Appellant. | ) |

Before:     **BOGGS**, Chief Judge; **ROGERS**, Circuit Judge; and **SHADUR**, District Judge.[1]

**Shadur, District Judge.**  Ronald Turner ("Turner") was convicted in the district

court of various offenses, comprising (1) possession of a firearm by a convicted felon,

(2) possession with intent to distribute cocaine, cocaine base ("crack") and marijuana and

(3) failure to appear.  Turner was sentenced to 306 months' imprisonment and five years of

supervised release and was ordered to pay a $5,000 fine and a $100 special assessment.  He

appeals his conviction and sentence on a number of grounds.

Because we find Turner's assertions of error at trial (except for one not ruled on here)

meritless, we AFFIRM his conviction.  But because we hold the district court committed plain

error at sentencing, we VACATE Turner's sentence and REMAND for resentencing consistent

---

[1] The Honorable Milton I. Shadur, United States District
Judge for the Northern District of Illinois, sitting by
designation.

with *United States v. Booker*, --- U.S. ---, 125 S.Ct. 738 (2005).

*Background*

In December 2002 police in Forest Park, Ohio received a tip from a confidential informant that Turner was involved in cocaine trafficking. Pursuant to that tip, on January 15, 2003[2] police obtained several garbage bags that had been abandoned for pickup in front of Turner's home. Their search of those bags' contents turned up marijuana stems and seeds, burnt marijuana "roaches" and mail addressed to Turner. On January 17 police applied for and obtained a warrant to search Turner's home. Their application for the search warrant was supported by an affidavit stating that based on the informant's tip, the contents of the garbage and Turner's criminal record, the police had cause to believe that evidence would be found showing a violation of Ohio Rev. Code §2925.11. That statute provides that "no person shall knowingly obtain, possess, or use a controlled substance."

On January 22 police executed the search warrant. Inside Turner's home they found digital scales, plastic bags containing cocaine, crack and marijuana, two loaded firearms and over $43,000 in cash. Police then arrested Turner and provided him with Miranda warnings, which he acknowledged he understood. Turner then said he wanted to cooperate with law enforcement personnel, and he told the arresting officers that the firearms were for protection against being robbed and that he was not a "kingpin," but sold drugs only to a core group of customers.

---

[2] Because all later events described here also took place during 2003, further date references need not (and do not) repeat the year specification.

On April 2 a federal grand jury indicted Turner, charging him (1) with possession of a firearm while being a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and (2) with possession with intent to distribute in excess of five grams of cocaine base and cocaine in violation of 21 U.S.C. §§841(a)(1), (b)(1)(B) and (b)(1)(C). Turner pleaded not guilty to those charges on April 7, and he was released on a bond conditioned on home confinement and electronic monitoring.

On April 25 the monitoring center connected to Turner's electronic ankle bracelet alerted pretrial service officers that Turner had left his home in violation of the conditions of his bond. As a result the district court issued a warrant for Turner's arrest on April 28. On July 25 police were notified of Turner's whereabouts. When they attempted to arrest him, Turner fled on foot, but he was caught after a chase. On his person police found marijuana, cocaine and approximately $1,000 in cash.

On August 20 the grand jury issued a superseding indictment, adding charges of failure to appear in violation of 18 U.S.C. §§3146(a)(1) and (b)(1)(A)(i), possession with intent to distribute cocaine in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C) and possession with intent to distribute marijuana in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(D). After a four-day jury trial beginning November 24, Turner was found guilty on all counts charged in the superseding indictment. In addition the jury determined by a preponderance of the evidence that Turner's home had been used to facilitate the drug offenses for which he was convicted and that he had derived $43,021.28 in proceeds from the commission of those offenses. It therefore concluded that both his home and those proceeds should be forfeited under 21 U.S.C. §§853(a)

and (p).

*Denial of Motion To Suppress*

Turner first challenges the district court's denial of his motion to suppress all of the evidence police obtained from his home on the ground that there was no probable cause for the issuance of a search warrant. We review for clear error the factual findings underlying the denial of a motion to suppress, but we review the legal conclusion as to the existence of probable cause de novo (*United States v. May*, 399 F.3d 817, 822 (6th Cir. 2005)). Here the district court, after examining the police affidavit, concluded that the confidential informant's tip lacked reliability and was therefore insufficient by itself to support a finding of probable cause. But it then held that the discovery of "marijuana seeds, stems, and multiple burnt marijuana roaches, together with Mr. Turner's prior drug trafficking convictions, provide[d] probable cause for the issuance of a search warrant." We agree.

Probable cause for the issuance of a search warrant exists "when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place" (*United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003)(citations and internal quotation marks omitted)). Turner argues that the evidence submitted in support of the search warrant was not sufficient to establish probable cause to search his home "for evidence of cocaine trafficking." But that is beside the point, for the search warrant specifically referred to "Marijuana, a schedule I controlled substance" and alleged a continuing violation of the statutory prohibition of the possession and use of "a controlled substance." In that regard the marijuana seeds, stems and "roaches" obtained from Turner's

garbage certainly sufficed to establish probable cause to search Turner's home for evidence of a

violation of the Ohio statute under *Johnson*, and Turner has not argued otherwise.

With the search thus being properly supported by probable cause as to one type of

controlled substance, it was not tainted by the fact that it also turned up evidence of other drug

violations. In short, Turner's attack on the reliability of the confidential informant's allegation

of cocaine trafficking is of no moment, and the district court correctly denied his motion to

suppress.

*Denial of Motion for a Continuance*

Next Turner challenges the district court's denial of his motion for a continuance, which

he claims would have allowed him an opportunity to investigate a potential selective prosecution

claim. "We review the district court's denial of a motion for a continuance for an abuse of

discretion" (*United States v. King*, 127 F.3d 483, 486 (6th Cir. 1997)), and the standard for

reversal based on the denial of such a motion is well-established (*United States v. Crossley*, 224

F.3d 847, 855 (6th Cir. 2000) (internal quotation marks and citations omitted)):

> Denial amounts to a constitutional violation only if there is an unreasoning and arbitrary
> insistence upon expeditiousness in the face of a justifiable request for delay. In addition,
> to demonstrate reversible error, the defendant must show that the denial resulted in actual
> prejudice to his defense. "Actual prejudice" is established by showing that a continuance
> would have made relevant witnesses available or added something to the defense.

Turner cannot show that the district court's refusal to grant a continuance was unreasoning or

arbitrary, nor can he show actual prejudice.

Turner's assertion that a potential selective prosecution claim existed was founded

entirely on a conversation he had with a fellow inmate while incarcerated in Hamilton County,

- 5 -

Ohio. That inmate, also being held on federal drug charges, told Turner that "of 77 inmates on federal drug charges (the result of Project Disarm) 72 were black and none of the 72 black inmates had bonds set for them." We cannot say that the district court's decision to deny Turner's motion for a continuance based on that limited proffer was a clear abuse of discretion--certainly the inability to investigate what appears at best to be a jailhouse rumor, with more than one possible untainted explanation even if it were true, does not rise to the level of actual prejudice sufficient to warrant reversal.

*Failure To Sever Counts*

Turner next urges that the district court should have severed various counts from the rest of the indictment and that its failure to do so prejudiced him. Because he did not move for severance below, the district court's failure to sever is reviewed under a plain-error standard (*United States v. Misher*, 99 F.3d 664, 669 (5th Cir. 1996)). Review under that standard of a failure to sever counts presents Turner with a steep hill to climb, as he must show "an abuse of discretion by the trial court as well as prejudice affecting his substantial rights and an extraordinary reason to reverse" (*United States v. Frank*, 354 F.3d 910, 920 (8th Cir. 2004) (internal quotation marks and citations omitted)). Turner cannot make that showing.

First Turner claims that the failure-to-appear charge should have been severed and tried separately. It is well established that a charge of escape or bail jumping and the underlying substantive offense are sufficiently connected to permit joinder under Fed. R. Crim. P. ("Rule") 8(a) (*see United States v. Peoples*, 748 F.2d 934, 936 (4th Cir. 1984)(per curiam); *United States v. Ritch*, 583 F.2d 1179, 1181 (1st Cir. 1978)). Under Rule 14(a), though, the district court could

have severed the failure to appear charge from the substantive offenses if Turner were able to show prejudice. On appeal Turner claims prejudice stemming from the jury's ability to hear information about his flight from home confinement and his later arrest after a foot chase. But as always the jury was instructed to consider each charge separately based on the evidence applicable to that charge. So Turner's generalized claim of prejudice does not support a finding that the district court abused its discretion, nor does it establish "an extraordinary reason to reverse."

Turner also claims that the felon-in-possession-of-a-firearm counts should have been severed from the drug charges. While he claims that those counts' inclusion prejudiced him because the jury could have relied on the presence of weapons or his felon status to convict him on the drug charges, "a jury is presumed capable of considering each count separately" (*United States v. Cope*, 312 F.3d 757, 781 (6th Cir. 2002)), and Turner has presented nothing to suggest otherwise. Hence we also reject that ground as a basis for his claim of error.

*Purportedly Improper Prosecutorial Remarks*

Turner further argues that his conviction should be reversed because the prosecutor assertedly made improper remarks at various points during the trial. In particular he points to questions asked by the prosecutor during the cross-examination of a witness testifying on Turner's behalf and two statements made by the prosecutor during closing argument.

We review claims of prosecutorial misconduct under the two-part test set out in *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999). First we determine whether the statements were improper. "If they appear improper, we then look to see if they were flagrant

and warrant reversal" (*id.* at 549).  To decide the flagrancy issue a court must determine

"1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the

statements were isolated or among a series of improper statements; 3) whether the statements

were deliberately or accidentally before the jury; and 4) the total strength of the evidence against

the accused" (*id.* at 549-50).

Turner first takes issue with the prosecutor's questioning of Turner's witness Bernice

Fletcher ("Fletcher").  After Fletcher testified that she stayed in Turner's home and that the guns

found there were hers, the prosecutor asked "If I told you that these items were found in Ronald

Turner's home and that those items were cocaine, crack cocaine, and marijuana, what would be

your opinion of Ronald Turner after hearing that?"  Defense counsel's objection to that question

was sustained.  After the prosecutor tried unsuccessfully two more times to pose much the same

question in much the same way, he then moved on.

Fed. R. Evid. 405(a) permits inquiry into "relevant specific instances of conduct" on

cross examination where a defendant's character witness testifies as to that witness' opinion of

the defendant or to the defendant's reputation.  We have previously noted that such inquiry is

allowed only where it goes to the accuracy of the character witness' testimony (*United States v.*

*Green*, 305 F.3d 422, 431 (6th Cir. 2002).  Fletcher, rather than testifying as to Turner's

character, was introduced to rebut the prosecution's allegation that Turner "possessed" the guns

found in his home.  Because she did not testify to Turner's character, and because the

prosecutor's question did not go to the accuracy of her testimony, that question was improper,

and the district court properly sustained defense counsel's objection.

But while the question was improper, it cannot be labeled as flagrant. It cannot be said to have misled the jury or prejudiced Turner, for the drugs mentioned were already in evidence and previous testimony had established that they were found in Turner's home. Indeed, Turner claims no prejudice from the question, instead urging that the prosecutor's repeated inquiry amounts to "badgering the witness" and constitutes "inappropriate conduct." More is required for reversal under *Francis*, and we therefore reject his claim on that ground.

As stated earlier, Turner also takes issue with two statements the prosecutor made in closing argument. But analysis plainly calls for the rejection of that claim as well.

First, the prosecutor said as to two individuals who were with Turner when he was arrested after absconding, "you heard no evidence in this case that those individuals were ever identified." Turner claims that statement was improper because he "had a constitutional right not to present evidence in his defense." We have difficulty understanding why that statement assertedly impinged on that right, but in any event we cannot say it was flagrant. And "[t]o reverse a conviction based on an improper non-flagrant statement, [this] reviewing court must determine that (1) the proof of the defendant's guilt is not overwhelming, (2) the defense counsel objected, and (3) the trial court failed to cure the impropriety by failing to admonish the jury" (*Francis*, 170 F.3d at 550). Here Turner has not made that showing. Proof of his guilt was overwhelming, and in any event his trial counsel never objected to the prosecutor's statement.

Second, Turner claims that the prosecutor misled the jury when he stated "[t]here has also been no evidence presented to you that Ronald Turner even went to Oklahoma," when in fact two witnesses testified on Turner's behalf that he went to Oklahoma the weekend before his

arrest. That prosecutorial statement indeed mischaracterized the evidence, but under *Francis* it was not flagrant--after all, defense counsel had the full opportunity to counter it during closing argument, jurors had the opportunity to hear and evaluate the testimony of those witnesses, and in any event they were told by the district court that closing arguments did not constitute evidence. Again, although the statement was improper, the weight of the evidence against Turner and his failure to object also defeat his challenge on that ground.

### *Insufficiency of the Evidence*

Turner next asserts that the evidence was insufficient to convict him of the two "felon in possession of a firearm" charges under 18 U.S.C. §922(g)(1)("Section 922(g)(1)"). In reviewing such a claim, we view the evidence in the light most favorable to the government and draw all inferences in the government's favor en route to deciding whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt (*United States v. Riffe*, 28 F.3d 565, 567 (6th Cir. 1994)). Contrary to Turner's argument, we find that a rational jury could readily have found all of the elements of the charged firearms offenses.

Section 922(g)(1) requires that the government prove (1) that the defendant was previously convicted of a felony, (2) that the defendant possessed a firearm and (3) that the firearm traveled in or affected interstate commerce (*United States v. Layne*, 192 F.3d 556, 571-72 (6th Cir. 1999)). Turner argues that the government did not present sufficient evidence to prove the second element. At trial he adduced Fletcher's testimony to rebut the allegation that he "possessed" the firearms found in his bedroom. She testified that the firearms were hers, that she had received them in the mail and that she had taken them with her to Turner's house, where

she was house-sitting while he was out of town. She further testified that she placed one gun in the night stand and one at the foot of the bed and left them both at Turner's home when he returned from a trip to Oklahoma City.

But at this appellate level what controls is the existence of Turner's own statement to the contrary: He told police when he was arrested that the guns were for his protection from being robbed. In terms of the standard that is applicable here, a rational jury could surely have chosen to believe that evidence rather than Fletcher's testimony, thus concluding that Turner "possessed" the guns. We therefore reject Turner's argument that the evidence was insufficient to convict him as to the felon-in-possession-of-a-firearm charges.

*Assertedly Ineffective Assistance of Counsel*

Turner's penultimate contention is that his trial counsel was constitutionally ineffective in failing to move for the suppression of statements Turner made after he was arrested. Pursuant to the teaching of such cases as *United States v. Martin*, 920 F.2d 345, 349 (6th Cir. 1990), we decline to consider that claim because it is being raised for the first time on appeal and "[t]here has been no opportunity to develop and include in the record evidence bearing on the merit of the allegations." That being so, a proper post-conviction motion under 28 U.S.C. §2255, rather than this direct appeal, is the appropriate vehicle for Turner to challenge his trial counsel's effectiveness.

*Sentencing*

Finally, Turner argues that his sentence violated the Sixth Amendment as construed by the Supreme Court in *Booker*. On that score we agree.

As *Booker* made clear following Turner's sentencing, the district court's computation of his offense level under the United States Sentencing Guidelines ("Guidelines") by using drug quantities greater than those charged in the indictment violated the Sixth Amendment (*United States v. Jones*, 399 F.3d 640, 649-50 (6th Cir. 2005)), as did its factual finding as to a wilful obstruction of justice, which produced a two-offense-level enhancement (*see United States v. Bruce*, 396 F.3d 697, 718 (6th Cir. 2005)). Sentencing enhancements in violation of the Sixth Amendment are subject to correction under plain-error review (*United States v. Oliver*, 397 F.3d 369, 380-81 (6th Cir. 2005)), and thus a remand to the district court for resentencing in a manner consistent with *Booker* is called for.

But because *Booker*, 125 S.Ct. at 764 and 767 made clear that sentencing courts must still consider the applicable Guidelines range when determining the appropriate sentence, the correctness of that calculation remains relevant. We therefore address Turner's argument that the district court engaged in impermissible "double counting" when it imposed a six-month consecutive sentence on the 18 U.S.C. §3146 failure-to-appear charge while also enhancing his base offense level two levels pursuant to Guideline §3C1.1 based on the same conduct.

In that respect, Turner's claim of "double counting" is at odds with our adoption in *Green*, 305 F.3d at 436 of the district court's explanation there:

> The statute governing failure to appear simply states that if a term of imprisonment is imposed for failure to appear, it must run consecutive to the underlying offense. See 18 U.S.C. §3146(b)(2). The creative approach taken by the Sentencing Guidelines, which enhances the underlying offense [for obstruction of justice] and then designates a portion of the total punishment as the consecutive sentence for the failure to appear offense, does not offend the plain language of the statute.

That holding implicitly (if not indeed explicitly) confirms the propriety of the district court's treatment of the issue here. Turner's effort to attack that treatment by attaching the label of "double counting" is without merit.

## *Conclusion*

We DECLINE TO CONSIDER Turner's ineffective-assistance-of-counsel claim, which he remains free to present hereafter via a motion properly filed pursuant to 28 U.S.C. §2255. Save for that reservation, we reject all of Turner's claims of error as to his trial and AFFIRM his conviction. But because the district court--understandably lacking in prescience--committed plain error at sentencing, we VACATE Turner's sentence and REMAND so that the district court may resentence him in accordance with *Booker.*